# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LESLIE A. VASS** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:23-cv-01714-JMC |
| **STUART NATHAN, et al.,** | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mr. Leslie Vass, filed the present lawsuit *pro se* against "Defendants, Attorney General for State of Maryland Mr. Stuart Nathan; Secretary Ms. Carolyn Scruggs, Maryland Public Safety & Correctional Services; Ms. Joyce Miller, Maryland State Treasurer Claims Supervisor; Ms. Audrey J.S. Carrion, Administrative Judge Circuit Court for Baltimore City; Mr. Rafeal J. Lopez; Secretary Maryland Department of Human Resources (DHR-Child Support); Mr. Paul J. Wiedefed, Secretary Maryland Department of Transportation; Ms. Lynda Lovette, Director of Maryland Criminal Justice Information System." (ECF No. 1).[1] The Court granted Plaintiff leave to amend his initial Complaint after detailing its deficiencies under Federal Rule of Civil Procedure 8(a). (ECF No. 5). Plaintiff's Amended Complaint now asserts causes of action for "contempt of state court orders," "contempt of U.S. District Court order," "abuse of power," and defamation. (ECF No. 6). Presently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 41). The motion is fully briefed (ECF

---

[1] As a preliminary matter, the Court notes that Plaintiff has mislabeled and potentially misidentified certain Defendants in this case. For instance, Anthony Brown was the Attorney General for the State of Maryland when Plaintiff filed his lawsuit, and Stuart Nathan has never held that position. Maryland records also indicate that Joyce Miller is the Director of the Insurance Division of the Maryland Treasury. *See Archives of Maryland Historical List Attorneys General, 1777-*, Md. State Archives, https://msa.maryland.gov/msa/speccol/sc2600/sc2685/html/attygen.html (last visited June 18, 2024); *Organizational Structure – State Treasurer*, Md. State Archives, http://2016.mdmanual.msa.maryland.gov/msa/mdmanual/08conoff/html/04treas.html (last visited June 18, 2024).

Nos. 45, 47) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motion to dismiss will be granted.

I.      **BACKGROUND**

According to Plaintiff's Amended Complaint, Plaintiff was convicted and incarcerated in 1975 for armed robbery and the use of a handgun while committing a crime of violence. (ECF No. 6 at 2).[2] Plaintiff was also arrested for attempting to escape incarceration in 1982. *Id.* at 4. On April 21, 1986, Baltimore City Circuit Court Judge Edgar P. Silver issued an order of expungement regarding the 1975 conviction after it was determined that Plaintiff was wrongfully convicted. *Id.*[3] Judge Silver's expungement order "stated that (3) years after the issuance, the records were to be destroyed." *Id.* Then-Governor Harry Hughes subsequently pardoned Plaintiff in August 1986. *Id.*

Plaintiff "applied for employment as a security guard with the Security of America Company" in June 1991 "but was told that he was denied the position because of the Armed Robbery Conviction Court Ordered Expunged/Pardoned." *Id.* Plaintiff was then informed in January 1992 that his 1975-armed robbery conviction had not been expunged by that time, so Plaintiff notified then-Governor William D. Shaefer "who in turn notified Secretary Mr. Bishop L. Robinson of Maryland Public Safety and Correctional Services," "who requested Plaintiff to submit Application for Expungement." *Id.* "Said Expungement Order was signed November 23, 1993," with instructions to destroy all relevant records three years therefrom. *Id.*

---

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022). The Court attempts to describe Plaintiff's factual allegations in chronological order although the timeline of events is not always clear from Plaintiff's Amended Complaint.

[3] Both parties note additionally that Plaintiff received various sums of monetary compensation resulting from his wrongful imprisonment.

2

On January 9, 1995, Plaintiff was arrested for misdemeanor assault by threat. *Id.* Plaintiff's prior armed robbery conviction was "used to deny bail" because Plaintiff was classified as a subsequent offender. *Id.* at 2–3. "Based on the 1975 Armed Robbery Conviction, Plaintiff [] was found 'guilty' and sentenced to prison term of 3 years, suspended 18 months imprisonment." *Id.* at 3. Plaintiff appealed that sentence "from the Baltimore City District Court to the Baltimore City Circuit Court." *Id.* While that appeal was pending, "Judge Joseph H.H. Pines was aware of the 1975 Armed Robbery Conviction and it had been discussed in the Judge's Chamber prior to Trial Commencing. Plaintiff [] elected to accept the State Offer of Time served instead of facing Judge Joseph Pines knowing the Wrongful Criminal Conviction had been discussed in chambers and in open court prior to trial." *Id.*

Plaintiff's Amended Complaint also reads:

October 27, 1996, Plaintiff Leslie Vass submitted Fingerprint Card to Maryland (CJIS) Criminal Justice Information System – Criminal History contained ****Box Advising that Governor Pardon Had Been Issued REPORTED**** United States District Court for Maryland – Grandison v Warden, Maryland House of Correction, Civ No: HM75-1724. Contempt Of a Court Order (#1) This practice has been continuous and ongoing (#2) 1998 Criminal Justice Information System – Fingerprint Card Request ***Boxed Note That Pardon Issued by Governor**** 2004/2005 Criminal Justice Information System Fingerprint Record Received with ****BOXED NOTED GOVERNOR PARDON ISSUED in violation thereof[.]

*Id.*

On May 6, 1998, Defendant Nathan contacted Plaintiff via letter after supposedly speaking with Plaintiff via telephone earlier that day. *Id.* at 4. Defendant Nathan's letter provided Plaintiff with a copy of his expungement documents, including a May 6, 1998, Memorandum from Karven H. Kodeck as the Deputy State's Attorney. *Id.*; (ECF No. 6-1 at 23).[4] That Memorandum explains:

---

[4] *See, e.g.*, *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 249 (D. Md. 2023) (noting that "the court may consider, without converting [a] motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits"). Defendants do not contest the authenticity of the documents attached to Plaintiff's Amended

3

> On August 15, 1986, the Honorable Harry Hughes, then Governor of the State of Maryland, granted a full pardon to [Plaintiff] regarding a conviction for the offense of escape in Case #18232004, and for the offense of robbery with a deadly weapon and a handgun violation in Case #67501059. [Plaintiff] was granted expungement of the record in Case #67501059 on November 15, 1993. The Petition in Support of that Order for Expungement erroneously omitted Case #18232004.
>
> Both the State and defense agree that this was mutual error and have requested the Order for Expungement be amended *nunc pro tunc* to include Case #18232004.

(ECF No. 6-1 at 23).

In "2003 Plaintiff [] learned that Maryland Dept of Human Resources – Child Support Enforcement Agency had reported Plaintiff [] as the Non Custodial Parent in Arrears for Child born October 24, 1975." (ECF No. 6 at 4). Plaintiff notified the agency that he was wrongfully imprisoned from July 1975 to October 1984 and that "Said Child was not the biological child of Plaintiff." *Id.* Then in March 2004, an attorney from the Baltimore City Department of Social Services filed a motion to authorize removal of Plaintiff's children, alleging that Plaintiff's children should be placed in foster care given Plaintiff's armed robbery and escape convictions. *Id.* at 4–5.

Plaintiff eventually obtained employment with the Maryland State Department of Labor. *Id.* While employed by the Department of Labor, Plaintiff was informed in July 2004 that "a random check was done on [his] name resulting in an arrest warrant being found" and was "advised to resolve the matter." *Id.* Upon contacting the Baltimore City Police and "being taken before the Court Commissioner," Plaintiff was held without bail because of his 1975 conviction resulting in Plaintiff's children being placed in Maryland State foster care. *Id.* Plaintiff was found not guilty of all relevant charges in July 2005. *Id.* In the interim, Plaintiff contacted Defendant Nathan and Defendant Miller, although neither the Amended Complaint nor the exhibits attached thereto shed light on the contents or details of these communications. *Id.*

---

Complaint, and the Court references these attachments given the Amended Complaint's lack of clarity in some instances regarding the facts underlying Plaintiff's claims.

4

Plaintiff then "learned in September 2018 after applying for United States Passport for travel to Galway Ireland, the Maryland Department of Health and Human Services certified [that Plaintiff] owed Child Support Arrears," resulting in Plaintiff being ineligible to receive passport services at that time. *Id.* This seems to be in relation to the child born on October 24, 1975, which Plaintiff disavowed paternity of. A subsequent investigation verified "in 2019" that Plaintiff was not the father of that child, and eventually "The National Passport Center was notified that [Plaintiff] was not an arrears obligated non custodial parent, which allowed said agency to issue [Plaintiff's] United States Passport and lifted Plaintiff['s] 'Suspension of Driver's Privileges' with the Maryland Department of Transportation." *Id.*

Based on the foregoing allegations, Plaintiff demands "judgment against Defendants Listed Separately on Attached Document In the Amount of Actual Damages Eight (8) Million, Five (500) Hundred Thousand Dollars and Punitive Damages Amount of Forty Eight (48) Million Dollars with interests and costs[.]" *Id.* at 5.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss Under Rule 12(b)(1)

"A federal court generally may not rule on the merits of a case without first determining that it has subject matter jurisdiction." *Scapes v. McKimm*, No. CIV WDQ-09-2231, 2009 WL 4726613, at *1 (D. Md. Dec. 1, 2009). "A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint." *Foster v. Howard Cmty. Coll.*, No. CIV.A. RDB-13-1395, 2014 WL 758027, at *1 (D. Md. Feb. 24, 2014). "This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the

5

complaint [are] not true.'" *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). Defects in subject matter jurisdiction cannot be waived or consented to. *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 621 (4th Cir. 2004), *rev'd on other grounds*, 546 U.S. 81 (2005); *State v. Ivory*, 906 F.2d 999, 1001 n.2 (4th Cir. 1990).

State sovereign immunity provides that "a state may not be sued by a private citizen absent its consent . . . ." *Dennard v. Towson Univ.*, 62 F. Supp. 3d 446, 450 (D. Md. 2014); *see alo Effland v. Balt. Police Dep't*, No. 1:20-cv-3503-CCB, 2022 WL 3107144, at *6 (D. Md. Aug. 4, 2022). Although state sovereign immunity originates in the Eleventh Amendment to the U.S. Constitution, "common law sovereign immunity 'predated' adoption of the Eleventh Amendment, which 'confirmed, rather than established, sovereign immunity as a constitutional principle.'" *Dennard*, 62 F. Supp. 3d at 450 (quoting *Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005)). When a defendant raises the defense of Eleventh Amendment sovereign immunity, the Court "reviews that defense under Federal Rule of Civil Procedure 12(b)(1)." *Krell v. Queen Anne's Cnty.*, No. CV JKB-18-637, 2018 WL 6523883, at *3 (D. Md. Dec. 12, 2018); *see also Criscione v. U.S. Nuclear Regul. Comm'n*, 493 F. Supp. 3d 423, 430 (D. Md. 2020). "[T]he burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019).

The Fourth Circuit has "noted important differences between a traditional subject matter jurisdiction analysis under Article III to the Constitution as compared to the hybrid jurisdictional analysis required by the Eleventh Amendment." *Forrest v. Balt. City, Md.: Balt. Police Dep't*, No. 1:22-CV-03220-JMC, 2023 WL 3847429, at *4 (D. Md. June 6, 2023). For instance, unlike traditional subject matter jurisdiction, Eleventh Amendment sovereign immunity may be waived

by the parties and imposes no requirement on a court to raise the issue *sua sponte*. *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). Nevertheless, the weight of authority in this District indicates that Eleventh Amendment sovereign immunity challenges are best resolved under Rule 12(b)(1) rather than Rule 12(b)(6), so the Court continues to do so here. *See, e.g.*, *Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 865 (D. Md. 2018) (collecting cases); *Hammons v. Univ. of Md. Med. Sys. Corp.*, 551 F. Supp. 3d 567, 579 n.6 (D. Md. 2021).

    B.  Motion to Dismiss Under Rule 12(b)(6)

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported

by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"*Pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Farrish v. Navy Fed. Credit Union*, No. CV DKC 16-1429, 2017 WL 4418416, at *2 (D. Md. Oct. 5, 2017), *aff'd*, 711 F. App'x 189 (4th Cir. 2018). This permits the Court to "consider additional facts and information supporting the complaint that is provided in an opposition to a motion to dismiss." *Morris v. Mem'l Dev. Partners, LP*, No. 1:23-CV-01641-JMC, 2024 WL 2155050, at *4 (D. Md. May 14, 2024). However, this "does not mean that the court should rewrite the complaint to include claims never presented." *Farrish*, 2017 WL 4418416, at *2; *see also Barber v. Obama*, No. CV RDB-12-2614, 2012 WL 12877388, at *1 (D. Md. Sept. 6, 2012), *aff'd*, 505 F. App'x 278 (4th Cir. 2013) ("A court is not obligated to ferret through a Complaint, searching for viable claims."). Nor does it require judges to "construct a party's legal arguments for him." *Johnson v. Navient Sols. LLC*, No. GJH-18-3612, 2019 WL 2270651, at *2 (D. Md. May 28, 2019) (quotation omitted).

### III.   ANALYSIS

#### A. Plaintiff's Factual Allegations Still Do Not Satisfy Rule 8

Plaintiff provides no clear authority supporting his causes of action for contempt of court orders and/or abuse of power. Regardless, even assuming that Plaintiff may maintain such causes of action in addition to his claim for defamation, Plaintiff's Amended Complaint fails to state a plausible claim for relief. Federal Rule of Civil Procedure 8(a) requires complaints to contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(e)(1) further requires that complaints be "simple, concise, and direct." As a corollary to these principles, "A pleading must give the court and Defendants

'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Barber*, 2012 WL 12877388, at *1 (quoting *Swirkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  Accordingly, this Court rejects pleadings that fail to indicate how each defendant caused a plaintiff harm, the nature of that harm, and/or the approximate date(s) on which each defendant committed those alleged harms where a defendant cannot be said to be on "fair notice of that which they are to defend."  *Bonilla-Mead v. McCabe, Weisberg & Conway, LLC*, No. CV PX-18-3113, 2018 WL 5279487, at *2–3 (D. Md. Oct. 24, 2018); *Morris*, 2024 WL 2155050, at *9.  This Court also routinely dismisses complaints that do not properly put defendants on notice of the particular claims being raised against them supported by plausible factual allegations underlying those claims.  *See, e.g., Barber*, 2012 WL 12877388, at *1; *Garner v. Harper*, No. CIV.A. GLR-11-1919, 2012 WL 3263848, at *2 (D. Md. Aug. 8, 2012); *Greene v. Obama*, No. CV RDB-15-658, 2015 WL 13055577, at *1–2 (D. Md. Mar. 25, 2015), *aff'd*, 633 F. App'x 196 (4th Cir. 2016), *and aff'd*, 633 F. App'x 196 (4th Cir. 2016).

Here, Plaintiff's Amended Complaint provides a chronological account of his convictions, court orders, and dealings with various state officials.  However, Plaintiff's Amended Complaint fails to describe how any of the Defendants may be liable under any of those potential causes of action.  Plaintiff's Amended Complaint contains no allegations regarding any acts or omissions by any of the Defendants supporting his claims, fails to indicate how any of the Defendants violated state or federal court orders, and fails to specify with any detail whatsoever how any of the Defendants abused their power or defamed Plaintiff.  As Defendants point out, Plaintiff's Amended Complaint "instead simply states the defendants' names and titles several times throughout the complaint."  (ECF No. 41-1 at 6).  Dismissal is warranted on this ground alone.

B.  <u>Plaintiff's Claims are Barred by the Applicable Statutes of Limitations</u>

Plaintiff's claims are also barred by the applicable statutes of limitations. "A court may grant a 12(b)(6) motion on statute of limitations grounds only if the time bar is apparent on the face of the complaint." *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2019). "In Maryland, the statute of limitations for defamation is one year from the date of accrual." *McClure v. Lovelace*, 214 Md. App. 716, 741 (2013); *see also* Md. Code Ann., Cts. & Jud. Proc. § 5-105. "Accrual occurs either the day of publication, or, under the discovery rule, 'when the [plaintiff] in fact knew or reasonably should have known' of the statement." *McClure*, 214 Md. App. at 742 (quoting *Poffenberger v. Risser*, 290 Md. 631, 636 (1981)).

Plaintiff's Amended Complaint relies on the factual allegations regarding his passport denial to support his defamation claim. But Plaintiff's Amended Complaint alleges that he was denied passport services in September 2018, nearly five (5) years prior to him filing this lawsuit. Even going by the unspecified date "in 2019" that Plaintiff was issued a passport after it was verified that Plaintiff did not owe child support, that occurred well more than one year before Plaintiff initiated this lawsuit. Liberally construing Plaintiff's Amended Complaint with reference to the factual allegations set forth in his opposition further highlights that any factual allegations regarding Plaintiff's defamation claim occurred well beyond the statute of limitations.

Regarding Plaintiff's remaining claims of contempt and abuse of power, the Court reiterates that it is unclear based on Plaintiff's Amended Complaint and opposition whether these are recognizable causes of action. Regardless, Maryland's general statute of limitations is three years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within with an action shall be commenced."). All factual allegations in Plaintiff's Amended

Complaint—including those regarding his passport denial—likewise occurred more than three years prior to Plaintiff filing this lawsuit and those claims are therefore untimely and subject to dismissal.

Plaintiff argues in his opposition that the above statutes of limitations should be tolled under the ongoing violations doctrine or the principles of equitable tolling. (ECF No. 45 at 6–7). "The 'continuing harm' or 'continuing violation' doctrine . . . tolls the statue of limitations in cases where there are continuing violations." *Litz v. Md. Dep't of Env't*, 434 Md. 623, 646 (2013) (quotation omitted). When the continuing harm doctrine applies, "every repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated." *Id.*; *see also Cain v. Midland Funding, LLC*, 475 Md. 4, 52 (2021) ("We explained that the doctrine is premised on the notion that, where the violation or the wrongful act is ongoing or continuing in nature (as opposed to the continued ill effects from the original alleged violation), the ongoing violations will not be barred by the statute of limitations merely because one or more of them occurred earlier in time."). But here, *all* of Plaintiff's factual allegations—even if accepted as true and property attributable to the Defendants—occurred beyond the statute of limitations period, including the most recent, additional allegations set forth in Plaintiff's opposition to the present motion. This is further supported by the fact that Plaintiff's opposition indicates in no way that he has suffered any harm within the last three years resulting from Defendants' alleged contempt and abuse of power.

Regarding equitable tolling, "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th

Cir. 2002) (quotation omitted). "The circumstances under which equitable tolling has been permitted are therefore quite narrow." *Id.* As the Fourth Circuit has explained:

> Equitable tolling has been allowed in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have also recognized that equitable tolling is appropriate when extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time. Equitable tolling is not appropriate, however, where the claimant failed to exercise due diligence in preserving his legal rights.

*Id.* (quotations and citations omitted); *see also Norris v. Sheppard Pratt Health Sys., Inc.*, No. CV SAG-22-0687, 2022 WL 2048005, at *1 (D. Md. June 7, 2022).

Here, Plaintiff's Amended Complaint contains no allegations that he either (1) filed a defective pleading during the statutory period, (2) was induced or tricked by Defendants or anybody else into allowing his filing deadlines to pass, or (3) that extraordinary circumstances beyond Plaintiff's control made it impossible for Plaintiff to timely file his claims. Plaintiff's opposition fares no better beyond conclusory assertions that equitable tolling applies in this case. Accordingly, Plaintiff's claims are also subject to dismissal for failing to abide by the relevant statutes of limitations (assuming *arguendo* that Plaintiff's causes of action are colorable) and may not be revived under either the continuing harm doctrine or principles of equitable tolling.

    C. <u>Defendants are Immune from Suit Under the Maryland Tort Claims Act and the Eleventh Amendment</u>

.    Defendants next argue that they "are State personnel and are therefore immune from suit under the Maryland Tort Claims Act." (ECF No. 41-1 at 8). Further, Defendants claim that "to the extent [Plaintiff] has sued defendants in their official capacities, the Eleventh Amendment bars this action." *Id.* at 9. Beginning with the Maryland Tort Claims Act ("MTCA") argument, "The MTCA grants State personnel immunity from liability 'for a tortious act or omission that is within the scope

12

of the public duties of the State personnel and is made without malice or gross negligence.'" *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 763 (D. Md. 2015) (quoting *McDaniel v. Arnold*, 989 F. Supp. 2d 809, 849 (D. Md. 2012)); *see also* Md Code Ann., Cts. & Jud. Proc. § 5-522(b). Maryland courts define "malice" as "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Leese v. Balt. Cnty.*, 64 Md. App. 442, 480, (1985), *cert. denied*, 305 Md. 106 (1985), *overruled on other grounds by Woodruff v. Trepel*, 125 Md. App. 381 (1999). Maryland courts define "gross negligence" as:

> [A]n intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he [or she] inflicts injury intentionally or is so utterly indifferent to the rights of others that he [or she] acts as if such rights did not exist.

*Cooper v. Rodriguez*, 443 Md. 680, 708 (2015).

As noted above, Plaintiff's Amended Complaint does little to tie each Defendant to unlawful actions beyond stating their names and titles where relevant, denoting that Plaintiff's claims are based on Defendants' actions in their official capacities within the scope of their official duties. *See generally* (ECF No. 6). Plaintiff further indicated when filing this lawsuit that Defendants are being sued in their official capacities. (ECF No. 1 at 2–5). The issue then becomes whether the Amended Complaint adequately pleads that Defendants' conduct was the result of malice or gross negligence. The Court concludes that it does not. Plaintiff's Amended Complaint contains no such allegations, and Plaintiff chose not to respond to this argument in his opposition to the present motion. Without any factual allegations supporting malice or gross negligence on behalf of the official capacity State personnel Defendants, Defendants are immune from suit under the MTCA.

Regarding the Eleventh Amendment argument, "The Eleventh Amendment provides, in relevant part, that '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State.'" *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019) (quoting U.S. Const. amend XI). "Despite the Amendment's language, the Supreme Court has recognized that the Amendment nonetheless confirms a broader concept of state sovereignty, such that the Eleventh Amendment must be understood to mean that a State is not amenable to the suit of *any* individual in federal court without the State's consent." *Singleton v. Md. Tech. & Dev. Corp.*, No. 22-2075, 2024 WL 2926635, at *3 (4th Cir. June 11, 2024) (emphasis in original); *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). "This immunity also applies to judgments against a public servant in his official capacity." *Parikh v. Brown*, No. 23-1111, 2024 WL 2764720, at *1 (4th Cir. May 30, 2024). "Thus, suits against a State, state instrumentality, or state official acting in their official capacity are permitted only if one of three exceptions apply: (1) the State has waived its Eleventh Amendment immunity; (2) Congress has abrogated the States' Eleventh Amendment Immunity pursuant to a valid grant of constitutional authority; or (3) the suit seeks prospective injunctive relief against state officials." *Wyatt v. Univ. of Md.*, No. CV JKB-23-0742, 2023 WL 4551861, at *2 (D. Md. July 13, 2023); *see also generally Ex Parte Young*, 209 U.S. 123 (1908).

Plaintiff's claims are asserted against Defendants in their official capacities as State of Maryland public servants. But Maryland has not waived its Eleventh Amendment immunity to such lawsuits in federal court. *See, e.g.*, *Dixon v. Balt. City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003), *aff'd*, 88 F. App'x 610 (4th Cir. 2004) ("While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code Ann., State

Gov't § 12-101, *et seq.*, it has not waived its immunity under the Eleventh Amendment to suit in federal court."); *see also Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 397–98 (4th Cir. 1990). Nor does Plaintiff indicate or otherwise argue that Congress validly abrogated the State's immunity in suits like the present one. Rather, Plaintiff chose not to respond to this argument raised by Defendants in the present motion. Further, Plaintiff's Amended Complaint seeks only monetary damages rather than prospective injunctive relieve against any state officials. Accordingly, Defendants are both (1) entitled to dismissal under Rule 12(b)(6) for failure to state a plausible claim for relief and (2) entitled to dismissal under Rule 12(b)(1) because this Court lacks subject matter jurisdiction given Defendants' Eleventh Amendment immunity. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) ("[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction."). Defendant Judge Carrion is further immune from this lawsuit under the doctrine of judicial immunity, as judicial immunity is "an absolute immunity" shielding "judges from monetary claims against them in both their official and individual capacities" resulting from "judicial acts," just as Plaintiff attempts to assert here. *Johnson v. Day*, No. CV SAG-23-2962, 2023 WL 7299959, at *1 (D. Md. Nov. 6, 2023); *see id.* at *1–2 (describing the doctrine of judicial immunity and dismissing claims against multiple federal and state judges).

**IV.     CONCLUSION**

For the reasons stated above, it is this <u>18th</u> day of <u>June, 2024,</u> by the United States District Court for the District of Maryland, hereby **ORDERED** that Defendants' Motion to Dismiss (ECF No. 41) is **GRANTED** and the Clerk of the Court is asked to close this case.


Date: <u>June 18, 2024</u>                                                          <u>        /s/                                    </u>
                                                                                                    J. Mark Coulson
                                                                                                    United States Magistrate Judge